Next case, excuse me, on for argument is United States v. McKenzie. Good morning. May it please the Court, Mr. Richards. My name is John Kucera. I represent Carlos McKenzie here today. On January 30th of this year, a case came out of the Southern District of Minnesota that I think speaks to most of the issues in this case. It's styled United States v. Oz, O-Z. It's 2017 Westlaw 410534. The procedural posture of the case was the government had filed . . . This is a controlled substance case, not a controlled substance analog case. That's why it's significant. The government had filed a motion in limine to keep the defendant from arguing that he didn't know that Fioraset . . . And, that was the controlled substance at issue and that's spelled F-I-O-R-I-C-E-T. I may be mispronouncing it. It was a controlled substance. And, the court eventually denied the motion. But, in getting to that decision, the court made some comments that I think are instructive for our situation here. The court says, the government argues that the Controlled Substance Act only requires that defendant . . . Excuse me, excuse me. That's not the part I want. Okay. The Controlled Substance Analog Act refers to the Controlled Substance Act for its standard. And, that's kind of what one of the issues in this case. The government seems to say, well, this is an analog case. Therefore, the Controlled Substance Act doesn't have anything to do with it. It doesn't apply. The government says this is not an analog case. Beg your pardon? The government says this is not an analog case. Well . . . It says that both of the substances listed in the indictment, MDMA and meth, are both listed as controlled substances. One scheduled one, one scheduled two. Right. So, we don't need to get to the Analog Act. Right. And, to have a specific charge about that. The charge was, you've got to find he knew it was a controlled substance. Okay. So, what's wrong with that analysis? Well, what else did the government instruct, or what else did the court instruct? McFadden, and what this court, this court relies on McFadden. In fact, the government and the defendant both relied on McFadden to make their arguments. The scienter requirement that's in the Controlled Substance Act applies. In other words, McFadden was an analog case. Okay. I mean, we all know that. But, the Controlled Substance Act that they relied on in McFadden is the same scienter requirement that we have in this case. Let me read you what the court in McFadden said. Okay. The ordinary meaning of Section 841A1 thus requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules. And then there's a footnote that specifically says, the defendant may know that the white powder is listed on the schedules even if he does not know precisely what substance it is. And if so, he would be guilty of knowingly distributing a controlled substance. Now, your argument is precisely that the district court erred by telling the jury exactly what the Supreme Court, what I just read from the Supreme Court, that it doesn't matter if he doesn't know what controlled substance it is as long as he knows he's dealing with an illegal drug. So, what am I missing about McFadden? Okay. This is the part of McFadden that you didn't read. There's two ways, assuming that the standard requirement is the same in both, that they can establish, that the government can establish. Right. The government could alternatively prove that he knew that it was methamphetamine even if he didn't know it was a controlled, methamphetamine is a controlled substance. But that's not an argument the government made in this case or tried to rely on. They relied straightforwardly on the idea that he must have known it was an illegal drug because of how he acted. Okay. And therefore, so I'm still trying to find out why there's some error in telling the district court, the district court telling the jury that he didn't need to know precisely what the name of the drug was. He needs to know one of two things. He needs to know the name of the drug or he needs to know, and the Minnesota case that I was alluding to relies heavenly on Chief Justice Roberts' concurrence, which obviously I rely on as well. But anyway. I guess I'd rather rely on the eight justices who signed the opinion and did not join Justice Roberts' opinion, which was concurring in the judgment and was not in that respect reflecting what the Supreme Court held. All right. Here are the two ways that the eight justices agreed with. The defendant needs to know that he was dealing with a substance that was listed on the federal drug schedules as a controlled substance. And there's no evidence that the defendant knew that. Zero. There's zero evidence or, and this is number two, that he knew the specific name of the substance. And the specific name of the substance, I mean, the only thing it was referred to at trial was ecstasy or sex pills. Neither of those appear, neither of those names appear on the federal drug schedule. It's either. Do you think the government in a marijuana case has to prove that somebody knew specifically that marijuana was a Schedule I controlled substance? No. All right. No, I don't. Do you think somebody has to prove that he knows that methamphetamine is a Schedule I controlled substance? Okay. No. And let me just say this. Can I just ask you a question? Did you just say that neither one's listed? It's listed as 3-4-methylenedioxamethamphetamine. That's listed. Schedule I. Right. Otherwise known as MDMA ecstasy XTC. Okay. So you're saying ecstasy is in there? Okay. Because I didn't think it was. I didn't think the word ecstasy was in there. Okay. I will say this. The idea that it's illegal somewhere is not enough. There are 10 states that I can find where MDMA is not a controlled, a criminal, it's not treated as a criminal statute as a controlled substance. Alabama, Arkansas, California. In fact, there's a California case that even. Why would it matter if this is a federal prosecution? Because the government seems to think as long as it's illegal somewhere. No. The government says as long as it's illegal under federal law. And he acts like he knows it's illegal. So that's the issue. Does he know that this is an illegal substance? Okay. And this is where I think Chief Justice Roberts' concurrence makes a difference. There is no way that you can reconcile, in my opinion, the footnote, this is footnote one, that says evasive behavior with respect to law enforcement can be enough. There's no way you can reconcile that statement with the idea that the government has to prove, number one, that the defendant knew he was dealing with something that was listed on the federal drug control substance, or that he knows the name of it and it's a common name. There's no way you can reconcile those. I understand. He knows it's a controlled substance. That's why he's hiding in the bathroom when he sells it. All right. Let me give you another example. Is there any law that you're aware of that says that the defendant isn't guilty of violating this statute unless he knows that he is violating this particular statute? It has to be a controlled substance on the federal drug schedules. I think that's pretty clear. I mean, if he doesn't know the name of it, and he doesn't know it, then the only other way to prove it is that they have to prove that he knows it's on the federally controlled substance list, and they didn't do that. That's my argument. Gunter testified that your client knew that there was ecstasy, right? One of the cooperating witnesses, Gunter, you know, they're using coded terms a lot, but he said, I know he knew that it was ecstasy. Well, I don't recall that, and I don't have a response to it. If he said it, he said it. So I don't have a response to that. Mr. Gutierrez, you've reserved two minutes for rebuttal. Thank you. Ms. Richards. May it please the Court? Monica Richards on behalf of the United States. Here, the quote, if I could, the indictment, as was quoted by Judge Stroney, does indeed charge Schedule I, Schedule II controlled substances. The two substances are listed, and there's no dispute about that. The only dispute is what they thought that they were referring to, and the defendant took the stand here, and the defendant said, I didn't know. I didn't know what it was. I didn't know it was illegal. So then at that point, it's a credibility finding. It's a credibility determination by the jury where they have, as Judge Stroney also pointed out, the co-defendant or the co-conspirator, excuse me, referring to the pills as ecstasy pills and saying that the defendant knew that they were ecstasy pills. So the jury's credibility determination is really the only thing that's up for discussion here. Is that the only evidence that counters, if you will, or that most explicitly, that explicitly counters the claim that he didn't know what it was? Well, it's also, there was that. We wouldn't have put forward a case just solely based on that. There was also corroboration by wiretaps, by video surveillance, and by the seizure of the pills themselves that corroborated the evidence that was, or the statement that was made by the co-conspirator. Didn't the records show that he was making a lot of these sales in his bathroom? There was one, the big sale, the one that was talked about, the initial sale that was between these particular co-conspirators, took place in a bathroom at a bar. There were other sales that took place. It was a large quantity. Wasn't it the evidence that it was a large quantity of pills? That was, I think that was the 488 pills. I don't think that was the largest. I think the 5,000, there was a batch of 5,000 pills that was the green with airplanes on them, distinctive. And there was also a batch that was off of the back of a tractor trailer. There was another co-conspirator who was the girlfriend of McKenzie who was sent across to Canada with money and then met a tractor trailer that had come in from Canada to pick up pills. And so that was another transaction that isn't one that you would typically think happens with a legal substance, that somebody would make those arrangements to import a legal substance. So the nature of the transactions themselves, as was pointed out, in a bathroom bar, in the basement of a nightclub, and then off of the back of a tractor trailer that's just come from Canada after somebody else has been sent to Canada with money and a different transaction or a different date. And there was also consistency between the two co-conspirators' testimony. There was consistency between the testimony of the girlfriend, Annette Rollins, and Gunter, who was the person who explicitly referred to them as ecstasy pills. So among those, it wasn't just a statement. It wasn't just he knew, and it wasn't just the defendant saying, on the contrary, on the converse side, it wasn't just the defendant saying, I didn't know. The defendant also took the stand and said a whole bunch of other things. And the other things that the defendant said were also things that the jury was reasonable, a reasonable juror was justified in determining did not lend to the credibility of the story, that it was some sort of play acting, that it was an effort at being a gangster. But the defendant's story was, I was pretending that I knew this was an illegal drug. Right. You know, and which I suppose further corroborates that the behavior is the behavior that one would expect of someone who was selling illegal drugs. It was a pretty good play acting, if it was play acting. But the nature, but the very fact that the pills that were found then is what ties it all up. The pills that were found were, in fact, tested, and there was a stipulation entered with regard to the chemical makeup of those pills, which fully undermined the assertion that he thought he was dealing with, I don't know, Tylenol or just sex pills, something that was innocuous. But the stipulation didn't say that he knew what was in those pills. No. The jury had to make that conclusion? Yes. I saw that in the reply brief, that my statements in that regard in my brief were taken differently. I didn't intend to say that. I didn't intend to imply that he knew anything in the stipulation. Yeah, I didn't intend, if that's the way it came across to the court as well, I apologize for that. I didn't intend to do that. The stipulation say only that as to the substance, not? Correct. Correct. It was a post-seizure treatment that was done on the pills. And then with regard to the, to go to just one more moment to the fake conspiracy concept, that really only came out from this particular defendant. The girlfriend wasn't clued into that, apparently. The other co-conspirators weren't clued into that. Nobody came forward and testified as to this plot to behave as if a gangster, as if he were a gangster. So this was, again, only statements that came from him, as opposed to the other sufficient evidence with regard to the actual nature of the transaction. Unless there's any further questions, then I would rest on my brief. Thanks, Ms. Richards. Thank you. Mr. Kucera, you've reserved two minutes for rebuttal. Well, let me just say that I'm not vouching for Mr. McKenzie's credibility as a witness. I'm not suggesting that this court ought to buy his story. I'm here only to argue about whether the government put on positive evidence to establish their case. Regarding the fact that the indictment alleged methamphetamine and then MDMA, I don't think there's any dispute that whatever methamphetamine was found was found in the same tablets. I mean, we're not talking about a separate substance that's different from what's in the tablets, okay? So that was a chemical analysis. I don't think there's any evidence that he knew there was methamphetamine as a separate substance from MDMA in those tablets. There's no evidence of that. The question was asked, didn't Gunter say that McKenzie believed it was ecstasy and that, in fact, he did say that, trial transcript 201 and page 456. However, this is my copy. I'm telling you it's from Mount Sinai, but this is my copy of section 13.0811 of the 21 CFR, and this is what it says about this particular controlled substance, MDMA. It makes no reference to ecstasy, the one I have. It just says 3,4-methylenedioxymethamphetamine, and then in parentheses it says MDMA. So my copy doesn't say ecstasy. My question was just isn't that generally known by the public to mean those substances, right? It doesn't have to be anyway. I'm saying it's not, and I'm saying it does have to be. So, obviously, that's where we disagree. The only thing I'd point out is that the government, in its brief on pages 18 and 19, cites extensively to the pre-sentence report in rebutting our argument in regards to sufficiency of the evidence. Of course, the pre-sentence report was not before the jury. Other than that, unless there's some questions, I have nothing else. Thank you very much, Mr. Lucero and Ms. Richards. We will reserve decision in this case and call the hearing.